UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MARSHALL CRAGGY, | ) |
| Plaintiff | ) ) ) |
| v. | )  Civil No. 04-247-P-S |
| UNUMPROVIDENT CORPORATION, | ) ) ) |
| Defendant | ) |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT**

This is an employment discrimination action filed, pro se, by Marshall Craggy in state court and removed to this court by UnumProvident, the sole defendant and Craggy's former employer. UnumProvident has filed a motion for summary judgment (Docket No. 8) to which Craggy has failed to respond in any way whatsoever. Based on the undisputed facts and legal analysis set forth below, I recommend that the Court **GRANT** UnumProvident's motion because it is entitled to judgment as a matter of law as to all of Craggy's claims.

*Discussion*

UnumProvident is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party," id. I review the record in the light most favorable to Craggy, the passive opponent of summary judgment, and I indulge all reasonable inferences in his favor. See Feliciano De La Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). However, the reality that Craggy, through his inaction, has failed to place a single one of the defendant's facts in dispute means that I deem the properly supported facts as admitted, see Faas v. Washington County, 260 F. Supp. 2d 198, 201 (D. Me. 2003). Craggy's pro se status does not relieve him of his duty to respond, see Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y 2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment"), nor alter the Court's obligation to fairly apply the rules governing summary judgment proceedings, see Fed. R. Civ. P. 56; Dist. Me. Loc. R. Civ. P. 56.

*The Complaint*

The 'complaint' Craggy filed in state court on October 15, 2004, is a letter "To Whom it Concerns." After setting forth his name and address the letter states:

> Please accept this as my personal request to file a civil case against UnumProvident Corp. regarding unlawful discrimination in employment pursuant to § 4621 of the Maine Human Rights Act.
> The charge of discrimination includes, but is not limited to[,] the charge put forth in the review done by the Maine Human Rights Commission under Title VII of the Civil Rights Act, the Age Discrimination Act and/or the Americans with Disabilities Act.

(Docket No. 1, Attach. 1.) The letter then states that he anticipates having an attorney representing him shortly but that his intent is to assure an initial filing of a civil case on this day. (Id.) UnumProvident removed the action to this court on November 8, 2004. Since filing his complaint Craggy has not filed any pleadings in the state court (up to the

time of removal) or in this court (since removal).  In its motion for summary judgment UnumProvident indicates that Craggy is not complying with discovery requests although a scheduling order has issued.

*Material Facts*

Craggy was born on June 6, 1976, and at the time his employment with UnumProvident was terminated, he was 26 years old. (Def.'s SMF ¶ 1.) He first worked as a "Technician" when he was hired in August 2000 and then worked as a customer service representative. (Id. ¶¶ 2-3.)

In February 2001, Craggy was verbally warned about his excessive unplanned absences from his work at UnumProvident and his failure to notify his manager in a timely fashion that he would not be able to come to work. (Id. ¶ 4.) On May 30, 2001, Craggy's manager at the time, Tamara Edison, gave Craggy a written warning performance improvement plan ("the Warning") setting forth UnumProvident's expectations for Craggy's attendance at work. (Id. ¶ 5.)  Craggy signed the bottom of the warning to acknowledge receipt of this warning which provided, among other things, that Craggy was expected to have no "occurrences of unscheduled absence without proper notification." (Id. ¶ 6.) In the warning, UnumProvident notified Craggy that the "next occurrence of unscheduled absence without notification may result in termination." (Id.)

In July 2002, Craggy began reporting to Marlene Costa. (Id. ¶ 7.) Craggy was one of ten to fifteen people that Costa supervised. (Id.)  On July 23, 2002, Craggy failed to report to work at UnumProvident in a timely fashion.  (Id. ¶ 9.)  On August 23, 2002, Craggy again failed to report to work at UnumProvident in a timely fashion, apparently because he had overslept. (Id. ¶ 10.)  Craggy, who was scheduled to be at work at 8:00

a.m., called Costa round 9:00 a.m. to say he had overslept but that he would be in shortly. (Id. ¶ 11.) Around 12:30 p.m., Craggy left a message for Costa telling her that he would not be in after all. (Id. ¶ 12.)

On August 26, 2002, Costa met with Craggy and reviewed UnumProvident's attendance policy and her expectations that he be at work when he was scheduled to work. (Id. ¶ 13.) During that meeting, Costa outlined her expectation that Craggy would be on time for work and would call before his scheduled start time to advise her that he would not be in. (Id. ¶ 15.) Again, Craggy was notified that further attendance problems could result in the termination of his employment. (Id. ¶¶ 16-17.) On that same day, Costa sent Craggy an e-mail summarizing their face-to-face meeting. (Id. ¶ 14.) Craggy responded to Costa's email with his own email, in which he stated in part: "Marlene, I do not in any way see how my being late today is foundation for the establishment of a trend of unscheduled absences. Intermittent tardiness is part of the process of the unpredictability of life itself concurrent with the stages of self experimentation and seeking the upper limits of one's potential and is not in the same realm as lumping one incident with corrected foibles from years past." (Id. ¶¶ 18-19.)

Around the same time in August 2002, Costa learned from Ms. Edison that Craggy's brother had died in May 2002. (Id. ¶ 20.) Costa was not certain that Craggy's brother's death was related to his attendance issues because he had had attendance issues before his brother's death. (Id. ¶ 22.) She only wanted to make him aware that support and services were available if he wished to take advantage of them. (Id.) Costa advised Craggy that he could seek leave under the Family & Medical Leave Act ("FMLA") and told him that he could seek assistance from UnumProvident's Employee Assistance

4

Program ("EAP"). (Id. ¶ 20.) Craggy did not request any accommodation and did not ask for help. (Id. ¶ 24.) He said that he was fine and did not seek a leave under the FMLA and did not seek assistance from the EAP as far as Costa knew. (Id. ¶ 24.) Based on all the information available to her, not the least of which was Craggy's representations of being fine, Costa did not believe that Craggy was mentally ill or that he suffered from a mental impairment. (Id. ¶ 21.) Rather, she believed that he was naturally grieving over his brother's death and could use some support. (Id.) Despite his attitude toward his tardiness, Costa did not terminate him because she wanted to give him another chance. (Id. ¶ 25.) On October 11, 2002, a Friday, Craggy did not report to work at UnumProvident at the scheduled time of 8:00 a.m. (Id. ¶ 26.) He called three hours after his scheduled starting time to say that he would be late, and he arrived around noon. (Id. ¶ 27.) When Costa talked to Craggy about his tardiness later that day, Craggy told Costa that he had been asleep and that he did not see how he could be expected to call in if he was sleeping. (Id. ¶ 28.) Costa scheduled a meeting with Craggy for October 14, 2002, to discuss his tardiness and absences. (Id. ¶ 29.)

On October 14, 2002, a Monday, Craggy met with Costa and Elizabeth Christensen, an Employee Relations Consultant at UnumProvident, to discuss Craggy's attendance issues. (Id. ¶ 30.) At that meeting, Costa sought to address Craggy's problems with attendance, telling him his actions were unacceptable and that his actions interfered with the appropriate management of the customer relations team of which he was a part. (Id. ¶ 31.) Craggy disagreed and argued that his position and his presence were not essential to the operation of the team. (Id. ¶ 32.) Craggy stated at that meeting that he couldn't predict the future, his life was "based on experimentation," and he pushed

himself so far that he just couldn't always meet all the demands he placed on himself. (Id. ¶¶ 34-35.) He repeated his assertions that he could not be expected to call in when he is asleep, noting that you "can't turn back time, it's not real." (Id. ¶¶ 33, 36.)  He also stated that his "higher guidance" told him to leave this job. (Id. ¶ 38.)  He told Costa and Christensen that while he was dreaming he was communicating with his deceased brother and that he couldn't be interrupted. (Id. ¶ 37.) More than once, he stated that his dream reality was the same as his waking realty. (Id. ¶ 36.)

Costa and Christensen conferred and decided to terminate his employment based on his history of attendance problems, his attitude toward his attendance problems and their belief that the problems would continue given his attitude and his failure to promise to correct his actions. (Id. ¶ 39.) Craggy was informed during the October 14, 2002, meeting that his employment with UnumProvident was terminated, effective immediately. (Id. ¶ 40.) Craggy's termination from his position at UnumProvident was confirmed by letter dated October 14, 2002. (Id. ¶ 41.)  In the termination letter, UnumProvident told Craggy that he failed to meet its performance expectations because of his "excessive unplanned absences and [his] failure to notify [his] manager in a timely manner of [his] inability to come into work." (Id. ¶ 42.) Before October 14, 2002, Craggy did not suffer from any physical impairment that prevented him from working at UnumProvident. (Id. ¶ 43.) Before October 14, 2002, Craggy did not suffer from any mental impairment that prevented him from working at UnumProvident. (Id. at ¶ 44.) UnumProvident did not terminate Craggy's employment because he is a man, because of his religion, because of his race, because of his national origin, or because of his color. (Id. ¶ 45.)

6

On or about April 10, 2003, Craggy complained to the MHRC that UnumProvident terminated him because it perceived him as disabled. (Id. ¶ 46.) The MHRC investigated this claim and, on August 10, 2004, concluded that there were no reasonable grounds to believe that Marshall Craggy was unlawfully discriminated against in employment on the basis of mental disability by officials of UnumProvident. (Id. ¶ 47.) Craggy did not contest the investigator's conclusion and did not submit anything for oral argument. (Id. ¶ 48.) At no time prior to filing his letter complaint on October 15, 2004, did Craggy ever complain that UnumProvident had discriminated against him because of his race, color, religion, sex, national origin, or age. (Id. ¶ 49.)

*Recommended Disposition*

On this record it is undisputed that Costa and Christensen conferred and decided to terminate Craggy's employment based on his history of attendance problems, his attitude toward his attendance problems and their belief that the problems would continue given his attitude, and his failure to promise to correct his actions. (See e.g., Ex.'s SMF ¶ 39.)

It is undisputed that UnumProvident did not terminate Craggy's employment because he is a man, because of his religion, because of his race, because of his national origin, or because of his color. (Id. ¶ 45). Accordingly, the defendants are entitled to judgment on any claim under Title VII. See 42 U.S.C. § 2000e-2(a).

To establish a claim under the Americans with Disabilities Act (ADA), Craggy must prove "1) that he was disabled within the meaning of the ADA; 2) that he was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and 3) that the employer took adverse action against him because of the

disability." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st Cir. 2002) (citing Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir.2002), García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000), and Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir.1998)). To the extent that the Maine Human Rights Act contains provisions analogous to the ADA, this Court construes the MHRA "in a manner consistent with the prevailing federal caselaw." Pouliot v. Town of Fairfield, 184 F.Supp.2d 38, 51 (D. Me. 2002). It is undisputed that before October 14, 2002, Craggy did not suffer from any physical or mental impairment that prevented him from working at UnumProvident. (Def.'s SMF ¶¶ 43, 44.) Craggy has also failed to generate a genuine dispute of fact that he was regarded as disabled by his employer. See id. at 1169 ("A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA."). As a consequence, the UnumProvident is entitled to judgment as a matter of law on any claim under the ADA or the Maine Human Rights Act.

Finally, it is also undisputed that Craggy was twenty-six-years of age when he was terminated (Def.'s SMF ¶ 1) and accordingly cannot pursue a remedy under the Age Discrimination in Employment Act, see 29 U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age.").[1]

---

1  UnumProvident also argues that all the federal claims, but the ADA claim, are time-barred because he never filed a claim with the EEOC within 300 days of the alleged discrimination charging discrimination based on race, color, religion, sex, or national origin. Apropos the MHRA claim the defendant argues that the complaint was filed one day late, making Craggy, once again in the defendant's eyes, tardy. Because the record so clearly demonstrates UnumProvident's entitlement to judgment on the merits of Craggy's claims, I have recommended granting judgment on the merits. However, should the court reject my recommendation UnumProvident would be entitled to have this untimeliness defense addressed.

*Conclusion*

For the reasons above, I recommend that the Court **GRANT** UnumProvident's motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated: June 1, 2005.                    /s/ Margaret J. Kravchuk
                                        U.S. Magistrate Judge